Burke, J.
The plaintiff was prosecuted and fined by the court of wardens in the penalty of 10.0/. for infringing a by-law, passed by the city council, and which subjected to the forfeiture of that sum, any one convicted of making Soap or candles contrary to the mode prescribed by that by-law. He has applied for a prohibition upon, this ground chiefly, that that court not having jurisdiction under its charter, for the recovery of that amount, hath exceeded its authority, and that of course, the whole proceedings are void. To give this case a full consideration, I think it necessary to inquire, 1st. If the corporation possesses the legislative power they have exercised — that of enacting laics and creating penalties to 1004 or any greater amount that they may choose ? 2dly. If they have a judiciary power for recovering these fines ? 3diy. If they nave also the executive power of levying them ? 1st. It is io be observed, that the power which they have set up, Itach no bounds or frontier that they shew to us. It is sovereign and unlimited, by their claiming authority (under the precedent of laying 100/.) to inflict as far as 500/. of consequence to 1,000/. or any greater sum, as they may think proper. This is a pretension so extravagant, that it seems to me to be paying a very sorry compliment to law and common sense, to dwell upon arguments to the contrary. The claiming of such authority, by a body too of very inferior jurisdiction, not equal perhaps to our county courts, and publicly supporting this claim as they do, shews dearly, that our laws, and the decision of our courts are In a state of uncertainty that men of sense and reflection *388 very little think of.’ Upon the slender basis of the confined authority which the coi-poration really possesses, to erect such a high superstructure, and insist publicly on their right to do so, proves another thing — it serves to illustrate upon a small scale, the intruding, usurping nature of power; and with how much greater than the energy of a wedge, it is eternally at work to force open for itself, more elbowroom and free license, than foresight itself or reason ever intended. The ground of this mighty claim to legislate and recover high penalties, to bind the person and property of a citizen without a trial by his peers, is the original charter of 1783, which extended their authority to that of a justice of the peace, and no more. In 1784, they applied to the legislature for an augmentation of power ; they obtained that of imprisoning for non-payment of fines, and a jurisdiction to the court of wardens coextensive in one instance with that which the court of common pleas possesses, viz. that of deciding causes as far as 20/. without the interven» tion of a jury ; except where the title of land may come in question. In this, and in all cases beyond 20/. the court of wardens are completely shut out from intermeddling, in as express language as could be made use of.
Thus, therefore, the by-law under which Zylstra was prosecuted, was utterly void; for the corporation was not vested with competent legislative authority; and they had as little judiciary power to try a cause and give judgment for 100/. as they held as legislators: therefore, for the court of wardens to hear and determine such a cause, without the intervention of a jury, was what no court in the state durst presume ; it being repugnant to the genius and spirit of our laws, all of which recognise jury trial, which is also guarantied to us expressly by our constitution. The conviction, therefore, of Zylstra being nugatory, the execution or further proceeding ought, in my opinion, to be stayed.
Geiiike, J.
of opinion that a prohibition should go, • as there were no express words in the act of incorporation. *389 or in any other act of assembly, giving power to the court of wardens to hear and determine on a case of this amount.
í Bae0 5GS»
i Bac. 504. 2l\Wms.20& and man? morc"
WatIes, J.
In the light in which I view this case, the question to be decided is of much importance to the citizens of the state, and involves the general jurisdiction of the court of wardens. For however the decision may appear to affect that court in a single instance only ; yet, if in this its jurisdiction is defective, it will be difficult to shew that any part of it is not so, beyond what may be exercised by justices of the peace.
I am willing to admit that the by-law itself is a valid one. If it restrained the exercise of an inoffensive trade, it would not be so ; but it is made to restrain one that is both offensive and dangerous. It is, therefore, calculated to guard the comfort and safety of the citizens; and the benefit of a by-law, is generally the touchstone of its validity. I am not, indeed, fully satisfied that the city council have the power to impose penalties to any amounts but I shall not now make it a question, as my decision in this Case will be on other grounds.
The only question I shall consider is, whether the court of Wardens can hold plea of a suit for the recovery of this penalty? I am of opinion that it cannot, and this opinion is founded on the following reasons — -1st. Because the power claimed is not granted by any express words of any general law. 2dly. Because, if it is expressly granted ; yet it is void, as being repugnant to the constitution of the state.
1. In every question on any corporate right, and in every question on the jurisdiction of an inferior court, the right should be manifest. If it is involved in any doubt, this circumstance alone is a strong legal obiection to it. The , , . . . _ authorities m support of this position are numerous and explicit; it is not, therefore, necessary to recite them all, a few will suffice.
The counsel for the court of wardens have indeed offer» ed strong and forcible reasons for implying the power claim *390 ed by that court. It is urged, that the law for incorporating Charleston, gives a power to the city council to affix and levy fines, without any limitation of their amount; that a subsequent law gives to the court of wardens a power to commit for fines and penalties, which necessarily includes the power of previously determining any suits respecting them. For how, otherwise, can that court proceed to commit for fines and penalties, if judgment be not first had therein for them ?
I am sensible of the force of this reasoning, and if it were permitted in any case, that implication might give jurisdiction to an inferior court, I would say it did so in this; but the law forbids any such construction, find declares that no powers, except such as are generally considered as inci* dental, shall ever be intended to belong to an inferior court, unless they are expressly given. Now there is no law which expressly declares that the court of wardens may hold plea of a case like this, nor is the power incidental; this court therefore, may safely declare that such a power does not belong to it.
But as possibly this construction may seem too rigid a one, I shall rest my opinion on another ground, which appears to me to be much stronger.
2. Admitting then, that the legislature intended to confer this large jurisdiction on the court of wardens, and that it had declared this intention in words sufficiently explicit %' yet-I have no difficulty in saying that the law in this respect is void, as being contrary to the constitution of the state.
B y the second section of the 9ih article, it is declared that “ No freeman of this state shall be in any manner de« “ prived of his life, liberty, or property, but by the judg*. “ merit of his peers, or by the law of the land” And by the sixth section of the same article, it is further declared, that 41 The trial by jury, as heretofore used in this state, shall 41 be for ever inviolably preserved..”
How then can a law be valid, which constrains a citizen to submit his person and his property, to a tribunal, that *391 proceeds to give judgment on both, without the intervention of a jury ? Does these words of the constitution, “ or “ bi/ the Imv of the land,” authorise it ? Do they mean any l-r,v which may be passed, directing a different mode of trial? Sucha construction would be incompatible with the declaration of this privilege ; it would be taking away all the security which that intended to give it; it would do more, it would be making the constitution itself authorise the means of destroying a right which it afterwards declares shall be inviolably preserved. For if the law may abridge the trial by jury, it may also abolish it; and this great privilege would be held only at the will of the legislature.
2 Coke’s Inst,
Sull.Le.ci. ssa.
Sull.Lect. SS4.
But when we consider the true import of these words, and allow them the construction which all the commentators upon magna charta (from whence they are taken) have concurred in giving them, they will then be found to afford a real security to the citizens for the preservation of this right, and to become an effectual bar to the innovations of the legislature.
I shall not resort to all the writers on this subject; it will be sufficient to quote the exposition given of these words by Dr. Sullivan, whose commentary upon magna charta, is perhaps the best that has been written ; it is an illustration of Lord Coke’s reading upon it, which no English lawyer has ever yet ventured to question.
“ The words the law of the land, mean the common law H or acts of parliament, down to the time of Edw. II. “ which are considered as part of the common law: vide a Hale’s II. C. L. 7. which does n.ot in all cases require a “ trial by peers.” It will be sufficient to point out in general the principal cases, where this lex terra;, or as Lord Coke calls, the due process of law, superseded the trial per pares. First then, if a man accused of a crime pleads guilty, so £t that there is no doubt of the fact, it would be an absurd u and useless delay to call on a jury to find what is already cc admitted; accordingly, by the law of the land, judgment u is given on the confession. So in á civil action, if the
Sull.Leet.3ss.
id. 392,
!d. 39r.
|<1.399.
s Black. Com. S3. 3Sp.
“ defendant confesses the action, or makes default, (in ú “ suit on a bond,) no jury is requisite. So, if both parties “ P^ad all the matters material in the case, and a demur- “ rer *s j°^ne<J) the judges shall try the matter of right de- “ pending on the facts admitted, and give judgment accord- “ fag f0 laVJ^ without a jury.” “ The inflicting of punish- “ ments at the discretion of courts for all contempt of their “ authority, is also part of the law of the landbeing found- “ ed in the necessity of enforcing due respect and obe- “ dience to the courts of justice, and supporting their dig- “ nity.”
Besides these several kinds of proceedings to judgment, practised by courts of common law, without the intervention of a jury, and which are authorised under the words the law of the land; these words also authorise other lands of courts, on account of their great public expediency, which do not admit this method of trial, and whose proceedings are different from those of the common law. These, in England, are the court of chancery, the courts ccclesias-tical, maritime, and military; and certain other inferior judicatories, some of which'are sanctioned by the common law, others by statutes ; of these, however, there are some of modern creation, which may be said to be of doubtful authority, as they seem to be considered even by Judge Blackstone, (who had high ideas of the omnipotence of parliament) as infringements of the prerogative of the subject.
The next inquiry is, what are these other kinds of courts which are authorised in this state, by the same words in our constitution ?
I answer, the court of equity, the court of admiralty, the courts of ordinary, courts-martial, and courts of justices of the peace. The three first, because they are necesr sary and distinct parts of our juridical system, without which the administration of justice would be incomplete ; the common law jurisdictions being incompetent to afford remedies for all the variety of public and private wrongs. Courts-martial, because the trial of offenders against martial law by a jury, would effectually destroy that subordina- *393 rion which is so necessary to the safety of an army, and is the soul of all military enterprises. The courts of justices of the peace — because they are sanctioned by long use, and it may be said by a popular adoption of them ; because they are necessary for the relief and convenience of the poorer class of citizens, whose circumstances will not admit of a long absence from home, and whose little debts require a speedy recovery, and are of too small an amount to bear the expense and delay attendant ~n suits in the superior courts. (w Even injustice is better than procrastination.” 4 Black. 442.) And because too, from the frequency of their sittings and the thinness of our society, it would not be practicable ; and even if it were, it would be an insupportable grievance to the citizens to serve as jurors in all of them.
270. § 0. Public Laws,
I do not reckon among the number of these authorised exceptions to the trial per pares, the equitable jurisdiction of the common pleas : because I do not consider this as excluding that mode of trial. It does indeed, by consent of the parties, proceed to judgment without a jury, but either party may demand one if he pleases. This then, is no proof that the legislature may dispense with this right ; on the contrary, it furnishes a striking and instructive instance of the sense of that body on the sacred nature of it, and is a kind of legislative evidence of its inviolability, which ought to have been remembered. While it committed to the superior court, a power which that' court was surely better able to exercise uniformly, and for the benefit of the citizens, than any inferior court; yet the legislature did not consider itself at liberty to exclude the trial by jury, hut expressly recognises the right of either party in a suit, to have a trial by that mode, if he should require it. If thh; right, however, is waived, the court may lawfully proceed to determine on the case ; for this, by consent, even arbitrators might do.
The only extraordinary jurisdictions, then, which, in my judgment, are sanctioned by the lex terra, are those I have enumerated. It cannot have escaped the observation of those who hear me, that I do not include among them the *394 jurisdiction of the court of wardens, even in cases not exceeding 201. I could wish to have avoided taking notice of this part of its jurisdiction, at present ; but in the consideration of the true meaning and effect of these important words in our constitution, on which not only the particular power now claimed, but also every other given to that court, must wholly depend, I am unavoidably led to consider what part of its jurisdiction is authorised by them, in. order to shew, with more certainty, what is not so. By the 7th clause of the act of 1783, to incorporate Charleston, the court of wardens is established with the same powers as are exercised by the justices of the peace; so far, then, its jurisdiction is legitimate. But by the 7th clause of an act of 1784, to enlarge these powers, it is declared, that “ the court “ of wardens shall and may have, hold, and exercise, the “ same powers and authorities in all cases of debt or da- “ mage, by whatever means sustained, and which do not “ exceed in value 20/. (except where the title to lands may “ come in question,) as the judges of the court of common “ pleas or admiralty have, hold, or do exercise, in their “ respective jurisdictions.”
Public Laws, 329.
íd. 347.
This clause will admit only of two constructions, either of which is fatal to the jurisdiction therein given. First, it may mean that the power of hearing and determining, in a summary way, without a jury, (which is the power given to the judges of the court of common pleas,) shall be subject (as that is) to the right of either party in a suit, to demand a jury if he chooses. Now, if on the trial of a cause in .the court of wardens either party should insist on this right, what is the consequence ? There is no jury already impa-nelled, nor can the court award a venire facias for the purpose ; the proceedings then are arrested, the jurisdiction of the court is rendered impotent, and all the power given by the law becomes a nullity. If, on the other hand, the law intended that the proceedings should be without a jury, (which indeed appears to be the true construction, as there is no reserve of this right, and no provision made for the exercise of it,) then the law is a direct violation of the com *395 stitution, and is therefore void. For what pretensions has the court of wardens to the same special sanction allowed to the courts before taken notice of under the words of the constitution ? It appears that they were admitted as exceptions to the common law proceeding per pares, on account of their being founded in necessity and great expediency. But it does not appear that the court ol wardens was produced by any of the causes which give legitimacy to them ; it does not exercise any power which the established courts are not fully competent to, nor was it necessary and expedient that its proceedings should be without a jury. Why, then, dispense with the fundamental right of the citizen ?
But it may be said, it is too late now to- question the authority of the court of wardens, because it was created before the making of the constitution, and is therefore confirmed by it.
If the constitution was the first acquisition of the rights of the people of this country — if then, for the first time, the trial by jury was ordained, and the right then commenced, there would be some ground for this conclusion. But the trial by jury is a common law right; not the creature of the constitution, but originating in time immemorial; it is the inheritance of every individual citizen, the title to which commenced long before the political existence of this society ; and which has been held and used inviolate by our ancestors, in succession, from that period to our own time ; having never been departed from, except in the instances before mentioned. This right, then, is as much out of the reach of any law as the property of the citizen ; and the legislature has no more authority to take it away, than it has to resume a grant of land which has been held for ages. It is true that the reasons which in England make this privilege so valuable, and have produced such enthusiastic eulc# gies on it, do not all exist here. 1'here, it is considered as a barrier between the rights of the people and the usurpa-tions of the government; here, it can be wanted for no such purpose s the government and the people have the sarna *396 common interests, and the same common views ; yet, there are other- reasons sufficient to endear this privilege to us, and give it a rank among the first of those which belong to . ° us as freemen. In a country like ours, so thinly peopled, , • ,, r ... where, as in all societies, every man ox any consideration has extensive private connexions, and often a secret interest in courting popular favour; if the power of proceeding to judgment, in all cases, was committed to a permanent body of men, it would sometimes happen that private affection or party views would intermingle in the trial of right, and prevent a fair and impartial decision. But when the rights of the citizens are to he determined on by 12 men, changed at every court, and indiscriminately drawn from ever)’ class of their fellow-citizens, there will be a better chance, generally, that the poor will receive an equal measure of justice with the rich, and that the decision of facts will be according to the truth of them,
I have hitherto considered the question as a general one, with respect to the court of wardens ; and if, from the discussion, it appears that the only jurisdiction of that court, which the constitution authorises, is that of justices of the peace, originally given to it, and that all that has been super-added is illegitimate and void, it would be superfluous to adduce other grounds of objection to the particular power claimed in this case. For if in civil cases, and within 20/. its proceedings are contrary to the constitution, how can itr proceed in a penal case, and to the amount of 100/. ?
There is, however, one other objection which I cannot forbear taking notice of, as it shews a peculiar impropriety in giving to that court a jurisdiction in this case, and is of too serious a concern to the rights of the citizens, to be overlooked. It arises from the nature of the city charter. Any one who will consider this at all, must see in it a most unnatural combination of the legislative, the executive and judicial powers. Heretofore it has been thought essential to civil liberty, to keep these powers widely asunder ; the separation of them was supposed to characterize a free government, and the union of them a despotic; one. But, by *397 virtue of the charter, the city council makes by-laws j they appoint, as is frequently the case, some of their own mem-hers the commissioners to carry them into effect; and the r ... . , same members afterwards may take their seats as judges, to determine on any breaches of them which may have been committed. It may sometimes happen, too, that, in the course of their duty as commissioners, they are witnesses to the violation of some by-law; they may then add one more character to this multiform political monster, and exhibit legislators, executors, prosecutors, witnesses, and judges, all in the same persons.
There surely could not be contrived, by the most ingenious tyrant, a more complete instrument for all the purposes of oppression. I speak, however, of its form and structure only; for I do not believe that it has yet been employed in doing mischief; I rather believe that it has been made to do much good. But it has not been harmless because it wanted power to be hurtful; the citizens are wholly indebted for this to the honour and integrity of the persons who have hitherto composed the corporation. It gives me pleasure to make them this acknowledgment, and I feel a still greater one in reflecting on this curious testimony in favour of a free government, which proves in-contestibly, that the happiness and welfare of the society is the interest of individuals, since the instruments of evil and mischief are, in the hands of freemen, not only harmless but even convertible sometimes into the means of general good. But this might not always continue, and a trust of this sort is dangerous, even with freemen ; it is right, therefore, to adhere to fundamental principles of security.
I will not lengthen this argument unnecessarily. The reasons already offered are sufficient, in my opinion, to shew that the court of wardens has no authority to proceed in this case, and any other reasons .to shew the same thing, would not make it more manifest. Being fully persuaded then, that the power claimed by that court does not belong to it; that any grant of it by law is contrary to the constitu-t’fpn; and that it is the peculiar and sacred duty of this *398 court to watch over and protect from all violation, the constitutional rights of the people ; I do not hesitate to concur with my brethren in ordering a prohibition to issue, &c.
Bay, J.
declared himself of the same opinion, and concurred fully with the other judges.
A prohibition was accordingly directed to be issued.
The city ordinance in question was afterwards repealed, and no attempt was ever after made to exercise so unwarrantable a jurisdiction.